IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DAVID HOLLIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:08-0781 |
| ) | Judge Trauger |
| YELLOW TRANSPORTATION, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM

Pending before the court is the defendant's Motion for Summary Judgment (Docket No. 22). For the reasons discussed herein, the defendant's motion will be granted and this case will be dismissed.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant Yellow Transportation, Inc., ("Yellow") is a freight company that transports freight nationally and internationally through its network of service and distribution centers, which are also known as terminals.[1] The plaintiff, David Hollis, began working as a causal employee for Yellow on July 11, 1998 at its Nashville terminal, and, on October 9, 1998, he was

---

[1]Unless otherwise noted, the facts are drawn from the parties' statements of material facts (Docket Nos. 25 and 30) and related affidavits and exhibits. Although facts are drawn from submissions made by both parties, on a motion for summary judgment, all inferences are drawn in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

1

promoted to the position of full-time dockworker. As a dockworker, the plaintiff was responsible for loading and unloading freight and moving trailers within the terminal.

In May 2002, the plaintiff was involved in a motorcycle accident, and he missed six months of work as a result of injuries sustained in that accident. While the plaintiff had no restrictions when he returned to work, in April 2003, the plaintiff's treating physician informed Yellow that the plaintiff was prohibited from using a clutch, and, therefore, he could not drive a manual transmission vehicle. After these restrictions were imposed, the plaintiff worked primarily as a "light duty" employee. On October 27, 2006, while still on light duty, the plaintiff obtained a release from his family doctor (not the plaintiff's treating orthopedist), permitting him to use a clutch. As the plaintiff now had conflicting statements from two different physicians regarding his ability to use a clutch, Yellow apparently directed the plaintiff to see a doctor employed by Yellow. After the plaintiff saw the "company doctor," a dispute arose between the parties as to whether Yellow or the plaintiff should pay for the examination.

The plaintiff filed a grievance over Yellow's refusal to pay for the medical examination. By way of background, under the relevant collective bargaining agreement between the plaintiff's union and Yellow, employees subject to disciplinary action or another type of qualifying adverse employment decision have the right to file a grievance with Yellow and the union. If the grievance cannot be resolved at the company level, it is referred to a grievance committee, which is comprised of union representatives and management personnel from other trucking companies. As to his grievance over Yellow's failure to pay for the medical examination, the plaintiff prevailed before the grievance committee, and Yellow reimbursed the plaintiff for the costs of the

2

examination.

On October 16, 2007, while the plaintiff's grievance was pending, the plaintiff filed a complaint, or charge, with the Equal Employment Opportunity Commission (EEOC), alleging that he was the subject of disability discrimination by Yellow, as indicated by Yellow's continuing imposition of light duty restrictions on his work and by Yellow's failure to pay for the medical examination. The plaintiff filed a similar complaint with the National Labor Relations Board. The plaintiff does not recall discussing these charges with anyone at Yellow, and he does not know who, if anyone, at Yellow knew of the charges. The affidavits filed by the plaintiffs' supervisors, Glen Pakis and Russell Rieves, indicate that Rieves did know of the EEOC charge, but Pakis did not.

In November 2007, as the result of another work-related injury, the plaintiff was limited to clerical work. One such "clerical" task, to which the plaintiff was frequently assigned, was to locate "missing" trailers within the terminal yard. Indeed, on November 24, 2007, Pakis directed the plaintiff to locate a group of trailers in the yard – the relevant trailers were on a list that Pakis provided to the plaintiff. While the plaintiff does not explicitly admit that he did not complete the assignment, there is no evidence that he did, there is no dispute that Yellow perceived that the assignment was not completed as instructed, and there is no dispute that Pakis issued a written warning to the plaintiff, which cited the plaintiff's failure to perform the assignment.

On November 28, 2007, Pakis again requested that the plaintiff locate the trailers on the list. Again, while the plaintiff refuses to explicitly admit that he did not complete the assignment, there is no evidence that the plaintiff performed the assignment and, again, Pakis issued a written

3

warning to the plaintiff that cited the plaintiff's failure to follow instructions and failure to complete the assignment.  Pakis and Rieves claim that, on the evening of the 28th, they had a meeting in which they agreed that the plaintiff should be terminated if he refused the assignment again.  The next day, November 29, Pakis again requested that the plaintiff locate the trailers.  As to this assignment, the plaintiff admits that he told Pakis that the assignment was a "fool's task" because Pakis already knew where the trailers were located and because Pakis was simply looking for a reason to fire him.

Pakis contends that, at this point, the plaintiff took the list, balled it up, and pushed it into Pakis's chest.  The plaintiff admits refusing to perform the task, but states that Pakis's description of his violent conduct is mere "rumor" and amounts to an "embellished" story.  (Docket No. 24 Ex. 1 at 99-100.)  After their altercation, Pakis informed the plaintiff that he was being discharged for refusing a reasonable work order, and the plaintiff was escorted off Yellow's property.  That night, Pakis provided Rieves with a copy of the plaintiff's disciplinary record from the incident, which reflected that the plaintiff had pushed the list into Pakis's chest.  On November 30, Rieves sent the plaintiff a discharge letter, discharging him for "outrageous conduct" and for "engaging in unprovoked physical violence while on duty."

The events of late November 2007 hardly amount to the plaintiff's first run in with Yellow's disciplinary system.  In addition to the November 30 discharge letter, in the course of his employment with Yellow, the plaintiff has been subject to twenty-five letters of warning, four "intent to suspend" letters, seven "intent to discharge" letters, and two letters of suspension, all for conduct ranging from habitual absenteeism, to abuse of company time, to failure to follow

4

instructions.

The plaintiff contends that the vast majority of these disciplinary citations were without merit. Indeed, the plaintiff filed grievances over most, if not all, of the citations levied against him during his career at Yellow. As a result of the grievance process, a substantial number of the citations were either rescinded or the punishment reflected in the citation was reduced. For instance, while Yellow gave notice of its intent to discharge the plaintiff seven times, the plaintiff was apparently able to use the grievance process to prevent a discharge each time. The plaintiff believes that he has been on Yellow's "hit list" of employees that management would like to terminate since shortly after he was hired, and he believes that Rieves has wanted to fire him since at least 2003, as demonstrated by the citations and Rieves's "unfair" and "harassing" treatment.

Not surprisingly, on December 4, 2007, the plaintiff filed a grievance over the November 30, 2007 discharge. At that time, the plaintiff did not claim that he was discharged in retaliation for filing his EEOC charge, rather, logically, he disputed the circumstances of his dispute with Pakis over the trailer locating assignment. On January 2, 2008, however, the plaintiff filed a second charge with the EEOC, alleging that Yellow had retaliated against him for filing the October 16, 2007 charge.

On February 27, 2008, a grievance hearing related to the plaintiff's November 30, 2007 discharge was held in New Orleans, Louisiana. As a result of that hearing, the grievance committee reduced the plaintiff's discharge to an unpaid suspension of approximately three months (time served) and, shortly thereafter, the plaintiff returned to work at Yellow, where he

5

apparently continues to work. On August 13, 2008, the plaintiff filed this lawsuit.

## ANALYSIS

The plaintiff asserts a single claim of retaliatory discharge in violation of the Tennessee Human Rights Act, T.C.A. § 4-21-101 *et seq.*, alleging that he was discharged in retaliation for filing an EEOC charge. The defendant has moved for summary judgment on that claim, arguing that there is no causal connection between the plaintiff's discharge and the EEOC complaint and that the plaintiff was terminated for legitimate reasons.

### I. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©. To prevail, the moving party must meet the burden of proving the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).

In determining whether the moving party has met its burden, the court must view the factual evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). "The court's function is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a

6

genuine issue for trial.'" *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

If the non-moving party fails to make a sufficient showing on an essential element of the case with respect to which she has the burden, however, the moving party is entitled to summary judgment as a matter of law. *See Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir. 1999). To preclude summary judgment, the non-moving party "must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 566 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252). If the evidence offered by the non-moving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the non-moving party, the motion for summary judgment should be granted. *Anderson*, 477 U.S. at 249-52. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Hill v. White*, 190 F.3d 427, 431 (6th Cir. 1999) (citing *Anderson*, 477 U.S. at 247-49).

## II.     Retaliatory Discharge Claim

Analysis of a claim of retaliation (including retaliatory discharge) under the THRA employs the familiar *McDonnell Douglas* burden shifting framework. *See Allen v. McPhee*, 240 S.W. 3d 803, 820 (Tenn. 2007). That is, the plaintiff must initially state a *prima facie* case of

7

retaliation by showing 1) that he, as an employee, engaged in activity protected by the THRA[2]; 2) that the exercise of his protected rights was known to the defendant, his employer; 3) that the defendant thereafter took a materially adverse action against the employee; and 4) that there was a causal connection between the protected activity and the materially adverse action. *Id.*

Once the plaintiff puts forward the *prima facie* case, the defendant has the burden to articulate a legitimate, non-discriminatory reason for the action. *Id.* at 821. If the defendant meets this burden, then the plaintiff "must present evidence demonstrating that the articulated reason is pretextual and that the defendant's action was actually motivated by a desire to retaliate against the employee." *Id.*

Focusing on only the final element of the *prima facie* case, the defendant claims that the plaintiff cannot establish a *prima facie* case of retaliation because the plaintiff cannot show a "causal connection" between the October 16, 2007 filing of the EEOC charge and the plaintiff's November 30, 2007 termination. (Docket No. 23 at 10-11.) Specifically, the defendant argues that "the fact that plaintiff was terminated approximately one and one-half months after filing his EEOC charge is insufficient, on its own, to establish a causal connection." (*Id.*)

The defendant simply overlooks, however, the Tennessee Supreme Court's *Allen* decision

---

[2] The defendant argues that, technically, this case should have been brought under the Tennessee Disability Act (TDA), T.C.A. § 8-50-103, because the THRA does not cover employment discrimination based on a disability, which was the basis of the plaintiff's EEOC claim. (Docket No. 23 at 10.) As both parties appear to recognize, however, no matter whether the claim was brought under the THRA or the TDA, retaliation is a viable complaint and the burden shifting analysis would be the same. *See Barnes v. Goodyear Tire & Rubber*, 48 S.W.3d 698, 709-10 (Tenn. 2000).

8

cited above. There, the Court concluded that "close temporal proximity of a complaint and a materially adverse action are sufficient to establish a *prima facie* case of causation." 240 S.W.3d at 823. In *Allen*, the allegedly retaliatory employment action took place almost exactly two months after the relevant complaint was filed, and the Court concluded that this was sufficient "temporal proximity" to "allow an inference" that the defendant was "motivated by an intent to retaliate ... [and] this inference when combined with the evidence of a materially adverse action is sufficient" to satisfy the "causal connection" element of the *prima facie* case. *Id.*

Here, as noted above, the plaintiff filed his EEOC complaint on October 16, 2007 and the plaintiff was discharged on November 30, 2007, about six weeks later. In light of the Tennessee Supreme Court's holding in *Allen*, it is clear that the plaintiff has satisfied the "causal connection" element of the *prima facie* case. As the other three elements are essentially undisputed, the court concludes that the plaintiff has established a *prima facie* case of retaliatory discharge.

As the plaintiff has established a *prima facie* case of retaliatory discharge, the burden shifts to the defendant to articulate a legitimate reason for the employment decision. *See Allen*, 240 S.W. 3d at 823. Here, the defendant has come forth with a plainly legitimate reason for its decision to terminate the plaintiff. That is, "plaintiff repeatedly and blatantly refused a reasonable work order on November 24, 28, and 29, 2007." (Docket No. 23 at 14.) The defendant argues that this conduct, including the plaintiff's rejection of the assignment as a "fool's task," "evinces an attitude of disrespect and insubordination" for which termination was entirely appropriate. (*Id.*) Plainly, the defendant has articulated a legitimate and permissible reason for the employment decision.

9

As the defendant has come forth with a legitimate reason for the termination decision, the plaintiff "must present evidence demonstrating that the articulated reason is pretextual and that the defendant's action was actually motivated by a desire to retaliate against the employee." *Allen*, 240 S.W.3d at 821. A plaintiff generally meets this burden by presenting evidence that (1) the defendant's proffered reason has no basis in fact; (2) the proffered reason did not actually motivate the employment decision; or (3) the proffered reason is insufficient to explain the adverse employment action. *Id* at 823.

Here, in response to the defendant's coming forward with a legitimate explanation for the employment decision, the plaintiff has filed a seven-page brief with no exhibits and few references to the factual record. (Docket No. 29.) The plaintiff fails to address, in any substance, the factual basis for the defendant's termination, the defendant's motivation, or the sufficiency of the defendant's explanation. Rather, the plaintiff merely argues that, in this dispute, "someone is right and someone is wrong," and that "deciding who is telling the truth is a pure credibility issue ... a matter reserved for the jury." (Docket No. 29 at 3.)

Plainly, under the standard discussed above, to survive a motion for summary judgment, the plaintiff must come forward with more than a simple argument that the disagreement in the case should be resolved by the jury. Rather, in the context of the *McDonnell Douglas* burden shifting framework, the plaintiff must come forward with some evidence that the plaintiff's proffered explanation is pretextual, that is, some evidence that retaliatory animus fueled the employment decision at issue in this case.

Rather, even drawing all inferences in the light most favorable to the plaintiff, the factual

10

record shows that the defendant's proffered reason has ample basis in fact, that the proffered reason did motivate the employment decision, and the proffered reason sufficiently explains the adverse employment action. There is no question that the plaintiff had an extremely lengthy history of discord with management, and it is clear that management repeatedly sought to terminate the plaintiff. These desires clearly predate the EEOC charge, and there is no apparent connection between the EEOC charge and those desires. Moreover, there is no dispute that the plaintiff did not perform the November 2007 assignments to the defendant's satisfaction, and there is no evidence that the plaintiff made any good-faith attempt to perform the assignments at all. While the parties dispute whether the plaintiff used force in rejecting the assignment on November 29, there is no dispute that he did not accept the assignment and rejected the assignment discourteously. Simply put, all of the evidence points to a direct connection between the plaintiff's insubordinate attitude (which had manifested itself over a career) and his termination, and there is no evidence in the record that supports any connection between the filing of the EEOC charge and the plaintiff's November 30, 2007 termination. Without such evidence, the plaintiff's retaliation claim cannot survive a motion for summary judgment.

## CONCLUSION

As the plaintiff has failed to meet his burden of demonstrating that the defendant's proffered explanation for the plaintiff's termination was pretextual, the plaintiff's retaliation claim fails, and, as such, the defendant's Motion for Summary Judgment will be granted and this case will be dismissed.

11

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge